[Crim. No. 209.   Third Appellate District.—August 13, 1913.]

THE PEOPLE, Respondent, v. L. O. SALLADAY, Appellant.

INTOXICATING LIQUORS—PROSECUTION FOR UNLAWFUL SALE—DISCREDITING WITNESS BY SHOWING INTOXICATION.—In a prosecution for selling liquors in "no license" territory, the defendant may, in order to discredit the main witness for the people, introduce evidence that he was intoxicated at the time he claims to have purchased the liquor, or the day before and the day after the time assigned, or during a period of two weeks when he was employed by the sheriff to trap the defendant. It is error to restrict such evidence to the precise time, or thereabouts, of the alleged purchase.

ID.—"TRAPPING" OFFENDERS—EVIDENCE SECURED BY SUCH METHOD.—Although it may be necessary at times to resort to "trapping" to secure evidence for the conviction of offenders against the law, such

course should be scrutinized with care, and no rule of evidence should be relaxed that, if properly applied, might create a reasonable doubt as to the defendant's guilt.

APPEAL from a judgment of the Superior Court of Mendocino County and from an order refusing a new trial.   J. Q. White, Judge.

The facts are stated in the opinion of the court.

C. M. Mannon, and G. E. Redwine, for Appellant.

U. S. Webb, Attorney-General, and J. Chas. Jones, Deputy Attorney-General, for Respondent.

BURNETT, J.—Defendant was convicted of selling liquor in "no license" territory in Mendocino County and he has appealed from the judgment and the order denying his motion for a new trial.

The only claim for reversal urged by appellant relates to the ruling of the court sustaining an objection to questions affecting the inebriety of the principal witness for the people. The witness, Glasgo Riggle, testified that he was employed by the sheriff to go to Covelo and "catch some of the blind piggers"; that he expected to get fifty dollars or more if the defendant were convicted; that he purchased a bottle of whiskey from the defendant in the evening of October 27, and that he remained in Covelo all together for fifteen or sixteen days.   He admitted that during this period he drank "quite a bit of liquor," but the court sustained the district attorney's objection to the following questions asked on cross-examination: "Were you drunk at all or intoxicated during that time?"   "As a matter of fact, Mr. Riggle, you were intoxicated during a greater portion of the time during that fifteen or sixteen days, were you not?"   "Now, during a greater part of that time you were in Covelo, you carried a bottle around in your pocket, didn't you?"

One W. F. McCombs testified as a witness for the defense, and, after stating that one of his rooms was occupied by Riggle and that he had seen the latter frequently during the said period of fifteen or sixteen days, the following proceedings occurred: "Q.   During those sixteen days what was his habit with regard to intoxication?   Mr. Duncan: Objected to as in-

competent, immaterial and irrelevant; if you want to show he was drunk on the 27th of October at the time when this was alleged to have happened, let them show it. The Court: Sustain the objection. Q. What was Mr. Riggle's condition as to intoxication on the 27th of October, 1912, Mr. McCombs? Mr. Duncan: I object to that as incompetent, immaterial and irrelevant, unless they put an hour or something like that approximately, somewhere when this thing happened. The Court: I think you will have to get it in a little closer than that. Mr. Mannon: I want it understood, if your honor please, that we, at this time offer to prove by this witness that during those sixteen days this complaining witness was during all the time habitually intoxicated and under the influence of liquor. The Court: You can prove that, at this time, he was drunk or intoxicated, if you can. Mr. Mannon: That is, on the evening of Sunday, October 27th? The Court: Yes. Q. I will ask you Mr. McCombs what Mr. Riggle's condition was with reference to intoxication on the evening of Sunday, October 27th, 1912, if you know. A. I have no way of knowing the exact dates, how drunk he was at one date; I have no way of knowing or remembering. Q. Well, I'll put it in another way. Was there any evening during the sixteen days that he lived with you there that he was sober? Mr. Duncan: Objected to as incompetent, irrelevant and immaterial. The Court: I sustain the objection."

There is no dispute that evidence of intoxication on the part of the witness at the time he claimed to have purchased the liquor from appellant was admissible. In Wigmore on Evidence, section 933, the rule is stated as follows: "Intoxication, if it is of such a degree as to deserve the name, involves a numbing of the faculties so as to affect the capacity to observe, to recollect, to communicate, and is therefore admissible to impeach."

It is also stated by the same author, section 1005e, that it is one of the collateral matters on which a witness may be contradicted.

In *People* v. *Haydon*, 18 Cal. App. 543, [123 Pac. 1102, 1114], it was held proper by this court to cross-examine a witness for the defendant to ascertain whether he was, during practically all the time of the trial, under the influence of intoxicating liquors, as bearing upon the witness's memory or want of memory as to the testimony given by him.

That a person's power of perception, the accuracy of his deductions and the integrity of his memory may be greatly affected by his condition as to sobriety, is, of course, a matter of common knowledge and it will not be seriously controverted. The principle was recognized by the learned trial judge, but we think he unduly restricted the defendant in his efforts to show its application.

If the appellant had shown that the witness was drunk the day before and the day after the time assigned to the asserted offense it would not be unreasonable to conclude that he was under the influence of liquor at the very hour in question. Evidence that the witness was drunk on the very day of the supposed offense would certainly tend to support the inference that he was, at least, not sober during the evening of that day. The court, however, closed the door to the introduction of such proof.

But appellant went further and offered to show that for practically all the time during the sixteen days, including the evening in controversy, the witness was intoxicated. This would be a circumstance which we think the jury would have a right to consider as affecting the credibility of the witness. Under such circumstances it is quite probable that his mental vision as to an important event occurring during the period might be distorted or his capacity to reproduce with fidelity what he saw or heard might be impaired.

It may be said, also, that the answer of McCombs as to the date of October is like that of the honest average witness. He exhibited commendable caution in his declaration that he could not remember the "exact dates" as to Riggle's sobriety, "about how drunk he was at any one date."

Appellant, though, we think, should have been permitted to obtain the information in a little different manner if he could. This he vainly attempted to do. The witness might have been able to state in reply to appellant's interrogatory that Riggle was not sober any evening during the said sixteen days and thus have enlightened the jury on a very important question for them to determine.

Under the peculiar circumstances of this case the exclusion of said evidence may have resulted to the prejudice of appellant, and in a miscarriage of justice.

A trap seems to have been prepared for appellant and the "stool pigeon" was Riggle, the main witness for the people. It may be necessary at times to resort to this method of securing evidence for the conviction of offenders against the law, but such course should be scrutinized with care and no rule of evidence should be relaxed that, if properly applied, might create a reasonable doubt as to defendant's guilt. We think defendant should have a new trial and the judgment and the order are reversed.

Chipman, P. J., and Hart, J., concurred.