## H. C. PICKERING v. STATE.

No. A-5208.  Opinion Filed Nov. 23, 1925.
(240 Pac. 1095.)

316

H. O. Glasscock, for plaintiff in error.

The Attorney General, for the State.

DOYLE, J. The information in this case, filed in the county court of Garfield county on the 13th day of December, 1923, charges that in said county "on or about the 6th day of December, 1923, one H. C. Pickering did then and there unlawfully sell four and one-half pints of spiritous and intoxicating liquor, to wit, whisky, to one B. E. Slagle." On the trial the jury returned a verdict finding the defendant guilty as charged in the information and fixing his punishment at a fine of $100 and confinement in the county jail for 60 days. From the judgment rendered on the verdict, he appeals.

The state relied for this conviction on the testimony of the witness B. E. Slagle, who testified that he lived at Carmen, Okla.; that on December 6th he received a commission as a special policeman in the city of Enid; that on the same day about 5 o'clock in the afternoon he saw the defendant at his place of business, known as the White Kitchen; that on December 7th in the forenoon he again visited the place, and when he went in there were a couple of fellows sitting in there; that he told the defendant he wanted some liquor, the defendant asked him how much,

and he told him half a pint, then the defendant filled a pop bottle out of a stone pitcher, corked it, and handed it to him, and he then paid him $2 and walked out; that defendant asked him to come back again; that he turned the bottle over to Chief of Police Butts, who labeled it in his presence. On cross-examination he stated that his duty was to catch bootleggers; that Mayor Carr took him around and showed him the places; that Chief Butts furnished him a list of the names, and he was to receive $10 a day and his expenses. His further cross-examination was as follows:

"Q. I will ask you if you was not in Pickering's place just one time since you have been here, and that was on the 8th day of December, about 7 o'clock in the evening, and that you were drunk at that time and he had to put you out of there?

"The state objects as incompetent, irrelevant, and immaterial.)

"The Court: Sustained. Exception.

"Mr. Glasscock: Your honor, I want to show—

"Mr. Crow (interrupting) : I object, your honor, only to the last part of it. I just object to the fact that he was intoxicated."

He was asked about a bogus check he had given to one Watkins. The county attorney withdrew his objection and asked the court to let the witness explain: "A. Our bank went broke out there, and that is how it happened."

He was then asked:

"Q. Didn't you see written on the Watkins check: 'Insufficient funds.' A. I don't know how they were marked. I took up several of them, I know.

"Q. Are you acquainted with a man by the name of McNabb? A. Yes, sir.

"Q. I will ask you if it is not a fact you were with him on the 8th day of December, and that you were drunk at that time? (State's objections sustained.)"

On the part of the defense, Mrs. Lula H. Pickering, wife of the defendant, testified that with her husband she conducted a small cafe in Enid, known as the "White Kitchen"; that B. E. Slagle was not in their place of business Thursday afternoon, December 6th, or on December 7th; that the only time he ever visited their place was Saturday evening about 7 o'clock on the 8th day of December; at that time he walked up to her husband and asked him if he had any whisky; her husband told him he did not have any; Slagle said, "I have been informed that I could get whisky here." Then he staggered back against a table where a lady was sitting, eating supper; that her husband said: "From your looks and actions you have had enough; you had better go home."

As a witness in his own behalf, the defendant testified that the first time he ever saw the witness B. E. Slagle was Saturday evening, December 8th, when he came into his restaurant and said, "Somebody told me I could get some whisky here," that he had a bottle with him, about one-fifth full, and said he wanted to get some more whisky; that he told him he did not have any whisky, and he staggered back against a table where a lady was eating, then he told him he had better go on home and go to bed, and he went on out; that he never at any time sold any whisky to B. E. Slagle.

W. E. McNabb testified that he was engaged in the real estate business at Enid for the past eight years and knows B. E. Slagle; was with him on the evening of the 8th day of December. He was then asked:

"Q. I will ask you if he was drunk or sober?

"The state's objection sustained, the court stating: The court will permit you to show that if the prosecuting witness was intoxicated at the time that this liquor is supposed to have been purchased, and in such a condition that he did not know what he was doing, that may be testified

to, and then it will be for the jury to determine the weight to be given his testimony on account of that, but not at any time previous or succeeding this occasion. (Exceptions.)"

Of the various assignment of errors, we deem it only necessary to consider those based on the rulings of the court in the rejection of testimony offered by the defendant.

It will be observed that the information charges a sale of 4½ pints of whisky, and the proof, if it can be said that the testimony of B. E. Slagle rises to the dignity of evidence, was the sale of one half pint of whisky on a day subsequent to that alleged. The prosecuting witness on cross-examination was asked if he was not drunk at the time of the transaction testified to. The court sustained the state's objection. The defense again offered to show by witness McNabb that the prosecuting witness was drunk at the only time, according to the testimony of the defendant and his wife, that he ever visited their place of business. The court in sustaining the state's objection to this question erroneously assumed that the defendant was bound by the testimony of the prosecuting witness as to the time he visited the defendant's place.

The precise question here presented was passed upon by this court in Prochneau v. State, 32 Okla. Cr. 210, 240 P. 1090. In that case we held:

"The fact that the prosecuting witness was intoxicated at or about the time of the transaction concerning which he has testified may be shown for the purpose of impeaching his credibility, without first interrogating him as to his condition at the time in question."

In Grim v. State, 32 Okla. Cr. 296, 240 P. 1093, a companion case, we held:

"Where the state places a witness on the stand who testifies to a transaction, it is the right of the defendant on cross-examination to bring out anything which may have happened during the time covered by the testimony of the

witness, which would tend to limit, explain or shed light upon the transaction testified to or which would tend to discredit any testimony given by the witness in chief."

A defendant in a criminal prosecution is entitled to a legal trial, conducted in accordance with the rules of law; and the question of his guilt or innocence should be determined upon legal evidence. Where material evidence has been offered on the part of the defendant, and erroneously rejected by the court, we are not at liberty to say that the error is merely technical or that the substantial rights of the defendant have not been prejudiced. Any legal evidence from which the jury may legitimately adduce guilt or innocence is admissible, if when taken with other evidence in the case its relevancy appears, and the rejection of competent evidence offered by the defendant constitutes prejudicial error, which, when properly presented to this court by exceptions reserved, will require a reversal of the conviction.

The other assignments seem to be well taken. However, enough has been said to indicate that we are of the opinion that the defendant did not have such a fair and impartial trial as he was entitled to under the law.

The judgment appealed from herein is, accordingly, reversed.

BESSEY, P. J., and EDWARDS, J., concur.