## JERRY (BLACKEY) GRIM v. STATE.

No. A-5293.  Opinion Filed Nov. 20, 1929.
(240 Pac. 1093.)

H. O. Glasscock, for plaintiff in error.

The Attorney General, for the State.

DOYLE, J.  The information in this case charges that in Garfield county, December 7, 1923, "one Blackey Grim did then and there unlawfully and willfully sell one pint of whisky to one B. E. Slagle." On the trial the jury returned a verdict finding the defendant guilty, but failed to

agree on the punishment. June 7, 1924, the court rendered judgment and sentenced the defendant to pay a fine of $100 and to be confined in the county jail for 30 days. To reverse the judgment he appeals.

For a proper understanding of the errors assigned, we will briefly state the material testimony.

B. E. Slagle testified: That his home is at Carmen, Okla. That on December 8th he met Mr. McNabb on the street; while talking to him another gentleman came along whose name he did not know, and together they went to the Overland rooms in Enid. There Mr. McNabb went to the telephone, called a certain number, and asked for Blackey Grim. Defendant's motion to strike who he asked for sustained. That in about 10 minutes Blackey Grim came there with a pint of whisky. That he gave Grim a $5 bill and Grim gave him two $1 bills. That he pulled the cork out of the bottle and it was passed around among the boys and two women there, and they all took a drink, when the bottle was handed back to him he put it in his pocket, and with Mr. McNabb and the other man left the place. That later he turned the bottle over to Chief of Police Jim Butts. On cross-examination he stated that he was employed by the city of Enid for the purpose of apprehending liquor law violators, and was paid $10 a day and his expenses; that Mayor Carr took him around the city and showed him the places he wanted him to get, and he was informed by the police department of the names of some of the boys he was to get. His further cross-examination is as follows:

"Q. Had you bought any other whisky that day? (Objected to by the state for the reason that it is incompetent, irrelevant, and immaterial).

"The Court: The objection of the state is sustained. Exception.

"Q. How much whisky did you have on you when you

went to the Overland rooms at this time? (Same objection.)

"The Court: Sustained. Exception."

W. E. McNabb testified that he went to the Overland rooms with B. E. Slagle and Henry Whittiker; Hazel White and another lady were there; that he made a telephone call and soon after defendant Grim came in; a little later he saw B. E. Slagle trying to open a pint bottle; then Slagle handed it to Grim and he opened it with a knife; Slagle took a mouthful and then passed the bottle around to all present; they played three or four records on the Grafanola, and Slagle pulled the bottle out of his pocket and passed it around the second time; that Grim took a drink each time it passed; that he heard one of the women say that she did not have any change, and she asked Grim if he had any, and Grim made the change. His cross-examination is as follows:

"Mr. McNabb, did you see this defendant, Blackey Grim, sell Bert Slagle a bottle of whisky there that morning? A. No, I did not see him hand him any whisky.

"Q. Do you know whether or not Slagle had any whisky before he went there? A. Only what he stated.

"Q. What did he say? (The state objects. The court sustained. Exception.)

"Q. Who did you call when you used the telephone? A. I tried to get a fellow.

"Q. Who was it? A. The one that answered the telephone I thought was Buck Shackley."

Redirect examination:

"Q. The fellow that talked with you said that he would send you down some whisky? (The defendant objects as hearsay.)

"The Court: Overruled.

"A. Yes, sir."

Recross-examination:

"Q. Was that the only time you ever drank whisky with Slagle up there? (The state objects.)

"The Court: Sustained. Exception."

At the close of the state's case the defendant moved the court for a directed verdict in the form of a demurrer to the evidence, which motion was overruled.

The testimony of the defendant in his own behalf is as follows:

"My name is Jerry Grim. My age is 25 years. I have lived in Garfield county all my life. My home is nine miles east of town on my father's farm. I have been living in Enid for about eight months, driving a taxi cab for Paul Thompson; I never did sell Bert Slagle any whisky; I was at the Overland rooms one time and Bert Slagle was there and was drunk at the time; he had a bottle of whiskey and was passing it around and giving drinks to the men and women. Mr. McNabb was there at the time."

Cross-examined, he was asked and answered the following question:

"Q. You have been convicted of a violation of the prohibitory liquor law, have you not? A. Well, I guess I have been convicted."

Redirect examination:

"The conviction you spoke of was in another case in which this same man Slagle testified against you, wasn't it? A. Yes, sir.

"Q. Were you at any other time arrested or charged with violating the laws? A. No, sir; no other time."

It is assigned as error the rulings of the court in refusing to permit certain questions to be asked on the voir dire examination of jurors. The record shows that each juror was asked this question:

"I will ask you whether or not you sat as a juror in any cases during the present term of court in which the

state relied upon the testimony of one B. E. Slagle, the prosecuting witness in this case, and, if so, whether or not you have formed any opinion as to the truthfulness of the said Slagle's testimony, in those former cases, and if so whether or not such opinion would be likely to influence you in the trial of the present case." (The state's objections were sustained; exceptions reserved.)

The purpose of the examination of a juror on his voir dire is to ascertain if there are grounds for challenge for either actual or implied bias; also, to enable the defendant to exercise intelligently his peremptory challenges. This court has uniformly held that a liberal latitude should be given the defendant in the examination of the jurors on their voir dire. Temple v. State, 15 Okla. Cr. 176, 175 P. 733. We think the questions were proper and pertinent for the purpose of ascertaining the competency of the jurors, and, assuming that the answers to the questions propounded would have furnished sufficient grounds for challenge for cause, the inquiry would then be proper and legitimate for the purpose of enabling the defendant to intelligently exercise his peremptory challenges. It follows that the court erred in sustaining the objections thereto.

Other assignments are based on the rulings of the court in the admission and exclusion of testimony. It appears that the main fact in controversy was whether the prosecuting witness carried to the Overland rooms the whisky that he there passed around or whether he purchased it, as he states, from the defendant. In this respect there is a direct conflict between the testimony of the prosecuting witness and the defendant. In such cases it is for the jury to determine which is worthy of belief, and their determination ordinarily ought to be sustained.

It has been repeatedly decided by this court that in prosecutions under the liquor law the testimony of spotters, private detectives, or paid informers is admissible. It is also held that it is proper to allow a searching cross-ex-

amination of detectives for the purpose of showing their interest in the case before the court, and thereby affecting their credibility. De Graff v. State, 2 Okla. Cr. 519, 103 P. 538. This cross-examination was for the evident purpose of affecting the credibility of the witness. The question was proper, and under the circumstances there can be no doubt that the court erred in sustaining the state's objections. See Prochneau v. State, 32 Okla. Cr. 210, 240 P. 1090.

For the same reason the court erred in sustaining the state's objection to the questions asked the witness McNabb as to whether or not Slagle had any whisky before he went to the Overland rooms, and as to whether or not that was the only time he ever drank whisky there with Slagle.

As to what the fellow said that the witness McNabb talked to over the telephone, that was hearsay testimony and should have been excluded.

It follows from what has been said that the judgment appealed from herein should be, and is hereby reversed.

BESSEY, P. J., and EDWARDS, J., concur.